FILED
Clerk
District Court

OCT 17 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1  MATTHEW T. GREGORY
   Attorney at Law
2  Second Floor, V.S. Sablan Building
   Chalan Piao
3  PMB 419, Box 10000
   Saipan MP 96950
4  Telephone: (670) 234 3972
   Facsimile: (670) 234 3973
5

6  DAVID J. LUJAN
   IGNACIO C. AGUIGUI
7  LUJAN, UNPINGCO, AGUIGUI & PEREZ LLP
   Attorneys At Law
8  Suite 300 Pacific News Building
   238 Archbishop Flores Street
9  Hagåtña, Guam 96910
   Telephone: (671) 477-8064/5
10 Facsimile: (671) 477-5297

11 *Attorneys for World Corporation*

12                  IN THE UNITED STATES DISTRICT COURT

13                              FOR THE

14                     NORTHERN MARIANA ISLANDS

15 YU SUK CHUNG,                     ) Civil Action No. **04-00001**
                                     )
16          Plaintiff,               ) DECLARATION OF
                                     ) MATTHEW T. GREGORY
17                                   ) IN SUPPORT OF MOTIONS IN LIMINE
       vs.                           )
18                                   ) Date:  October 21, 2005
                                     ) Time:  10:00 a.m.
19 WORLD CORPORATION,                ) Judge: Hon. Alex R. Munson
                                     )
20          Defendant.               )

21     I, Matthew T. Gregory, hereby declare as follows:

22     1.   I am co-counsel of record for Defendant World Corporation in this action.

23     2.   Attached hereto as Exhibit "A" is item Bates stamped as 255-256 as part of Plaintiff's

24 Trial Exhibits.

25
                                      - 1 -

1  3. Attached hereto as Exhibit "B" is item Bate stamped as 331-332 as part of Plaintiff's Trial Exhibits.

2  4. Attached hereto as Exhbit "C" is a true and accurate copy of Plaintiff's expert witness disclosure related to Mr. Joon Hwan Park.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 17th day of October, 2005.

_____
MATTHEW T. GREGORY, ESQ.

- 2 -

# EXHIBIT "A"

**Part of Chung's Trial Exhibit Bate stamped as 255-256**

*Document #802-803*

# SAIPAN ARTICLE OF INCORPORATION Check List

1. Definition of Incorporators?
   - Is it same concept as stockholder ?
   - Can it be a corporation? (World Construction?)
   - The minimum number of persons?

2. Actual Shareholders of World Corp.?
   - If it is World Construction, does all the World Constructrion's stockholders (15 persons total) become the stockholders of World Corporation?
   - In order to have a stockholders' meeting to elect members of Board of Director, what type of people has to be formed to open the meeting?
   - Isn't it necessary to state share percentage of the stockholders?

3. <u>In case of chairman (Cho, Ku Sang), In order to get long-term business permit, evidence of $250,000 investment in saipan. Thus, because World Construction is 100% shareholder of World Corporation, we submitted Chairman Cho's share % of World Construction. But the agent who was in charge of his visa process did not accept it. So World Corp. made a certificate of issuing 123,624 shares ($1,266,420). After then we did not do following documentation works and we did not report it every year when annul report filing.</u>

4. <u>As same reasons as above, in case of Bu-Hyun Lee also, for him to get 2 year investment visa, he forged a document (BOD resolution - approval of $250,000 capital increase) as if he as an individually invested and reported it. In fact no money or actual things were not invested and there is no record of cash-in.</u>

5. <u>Here actual shareholders in the document should be:</u>
   <u>World Construction – 510, 139 (Shares)</u>
   <u>Bu-Hyun Lee   - 25,000</u>
   <u>Ku-Sang Cho   - 126,646</u>
       <u>Total: 661,785 should be accurate, I think</u>
   <u>However, in this case, according to Korean Foreign Investment Law, it looks like that an</u>

**individual invested above amount without Government permission, there is problem.**

6. In this situation, what is a way to withdraw Mr. Lee's 25,000 shares, which are fake (?) investment amount?

7. The Authorized Capital started with 65,000 shares in the article of corporation, became 483,000 shares in the middle, and became 813,000 shares now (in the rescent Sept. 19, 1997's written resolution of stockholders' meeting). But unpaid amount still remains. Then is it possible to increase the capital by increasing the number of authorized capital?
Otherwise, after subscribing all unpaid amount,
Then after increasing authorized capital, to pay up the amount. I guess that is the right procedure. (Please check it)

8. If there is any wrongly reported contents in the annual report that is currently reported to the Office of the Attorney General yearly, is it possible to adjust them now?

9. In case of Dae-Yoo Corporation, share % of stockholders were stated clearly. But it does not match with stockholders of Dae-Myung Construction in Korea at all.
Do we have to assign it by relating its stockholders with Dae-Myung Construction's stock holders? How should the shares % be indicated?

10. The authorized capital of Dae-Yoo Corporation is $100,000, but the paid-in amount until now is only $10,000. In this case, are there any problems?

11. Is there any regulation regarding the minimum amount of capital shares that has to be paid in order for the company to operate?

# EXHIBIT "B"

**Part of Chung's Trial Exhibit Bate stamped as 331-332**





# EXHIBIT "C"

**Chung's expert witness disclosure related to Mr. Joon Hwan Park
Bate stamped as 000001-000010**

# RESUME

Name              : Joon Hwan Park
Date of Birthday  : June 23, 1968
Sex               : Male
Present Address   : 3-205, Samick APT, Bangbae-Dong,
                    Seocho-Gu, Seoul, Korea, (Home)
                    154-2 Buam-Dong, Jongro-Gu,
                    Seoul, Korea, 110-816(Office)
Tel.              : 82-2-3482-4932 (Home)
                    82-2-364-6431 (Office)
e-Mail Address    : joonhotel@ahla.co.kr

## Present Position

2002. 1- Present : Vice Dean, AH&LA Educational Institute, Korea

## Education

1998.5-1999.5  : Post Graduate Diploma of Hotel Management, UCCR
                 Switzerland
1987.2- 1994, 2 : B.A. Political Science, Pusan National University,
                 Pusan, Korea.

## Experience

2001.1-2001.12 : C.E.O. & Chief Consultant, Simplon Co., Ltd.
1999.5-2000.12 : Assistant Dir. of Public Area, Hyatt Regency Chicago
1999.1-1999. 5 : F&M Manager, Haus Beau Site Hotel, Switzerland
1993.12-1997.5 : Employment Mgr., Front Clerk, Sheraton Walker Hill Hotel,
                 Seoul, Korea

000001

## Certification

| | |
|---|---|
| 2002.12.12 | : Certified Hotel Administrator (America Hotel & Lodging Association) |
| 2002.11.2 | : AH&LEI Faculty Member |
| 2001.10-2002.12 | : Instructor of Managing Front Office Operation, Managing Housekeeping Operation, Managing Hospitality Human Resources, Supervision in the Hospitality Industry, Hospitality Facilities Management and Design, The Lodging and Food Service Industry, Leadership and Management in the Hospitality Industry, Security and Loss Prevention Management, Food and Beverage Service, Hospitality Sales and Marketing, Hospitality Industry Financial Accounting, Bar and Beverage Management. |

## Affiliation

2004.1-Present : Director, Korea Certified Hotel Manager Association
2002.5-Present : Director, Korea Hotel and Resort Association

## Publication(Translation)

| | |
|---|---|
| 2003. 6 | : Bar and Beverage Management(AH&LEI) |
| 2002. 12. | : Managing Front Office(AH&LEI) |
| 2002. 5. | : Convention Management and Service(AH&LEI) |
| 2001. 3. | : Food & Beverage Service (AH&LEI) |



# The Board of Trustees Proudly Welcome

## Joon Hwan Park

As a member of the faculty
of the American Hotel & Lodging
Educational Institute
in recognition of outstanding service
on behalf of hospitality education

## November 2, 2002





The Educational Institute
of the American Hotel & Lodging Association

upon the recommendation of the

Certification Commission

hereby recognizes

Joon Hwan Park

as a

Certified Hotel Administrator

attesting to successful completion of the knowledge and experience requirements, thereby reflecting a commitment to maintaining the highest standards of competence as a hospitality professional.

Caroline A. Cooper
Chairman, Certification Commission

December 12, 2002
Issue Date

Anthony G. Marshall
President, Educational Institute

December 12, 2007
Expiration Date

PROFESSIONAL CERTIFICATION


# Certified Hotel Administrator (CHA)

Today's successful general managers and top hospitality professionals must have effective human resources and property management expertise, sound judgment ,and practical skills. They must keep pace with change, improve their knowledge, and share their experience with others.

The Certified Hotel Administrator (CHA) designation provides recognition for these skills. Recognized worldwide, the CHA designation is the premier symbol of professional achievement for lodging executives. It's an honor awarded to professionals whose leadership and managerial abilities are exemplary—professionals who, by combining education and experience with dedication to the industry, have achieved a high level of expertise.

The CHA designation may be used on letterhead, business cards, and other writings. The CHA lapel pin and wall plaque are the visible symbols of the holder's status and achievement.

Once certified, designees are automatically enrolled in the CHA Recertification Program, which recognizes and rewards continuing efforts toward hospitality career growth. A portfolio to help track professional-development activities is provided. Every five years, the Certification Commission will recertify those who qualify based on their accomplishments. A new, jeweled lapel pin (reflecting the number of years certified) and certificate are awarded at the time of each recertification.

*Qualifications for CHA Certification*

Because individual backgrounds vary widely in the hospitality industry, applicants may pursue the CHA designation through one of three options: Plan A emphasizes an education background; Plan B emphasizes industry experience;and Plan C emphasizes early entry. All plans require documented evidence of managerial experience and successful completion of a comprehensive examination.

**Plan A Eligibility** – *Education Emphasis*

- At least a 2-year hospitality degree from an accredited institution or successful

completion of the Educational Institute's Hospitality Management Diploma

*and*

- Current employment as a general manager, owner/operator, or corporate executive* (see below) in a lodging hospitality company, with at least two years of full-time experience in one or more such positions.

**Plan B Eligibility** -- *Experience Emphasis*

- Current employment as a general manager, owner/operator, or corporate executive* (see below) in a lodging hospitality company, with at least three years of full time experience in one or more such positions.
- *Educators Only:* Currently teaching hospitality management courses on a full-time basis at an accredited academic institution; three years of experience in this capacity; three years of full-time experience in a management position in a lodging hospitality company.

**Plan C Eligibility** -- *Early Entry*

Plan C requires a candidate to hold a qualifying position at the time of application. Plan C does not have an education requirement, but a degree will reduce the length of time you are required to spend in a qualifying position.

Through Plan C you can begin working on your CHA designation and demonstrating your commitment to professional development the first day on the job. Plan C enables you to take the CHA certification test up to three times so you can gauge your progress and knowledge against an industry proven standard. You no longer need to wait to see if you meet the benchmark of industry quality. You can prove it, and pursue a strong professional development regimen. This plan will allow individuals who are in qualifying positions to pursue their certification even if they are lacking in experience.

A Plan C candidate who is in a qualifying position:

- May sit for the examination BEFORE meeting the experience requirement.
- May take the examination up to 3 times.
- May sit for the examination while in the process of completing a hospitality degree.
- Will be required to complete a specific number of points by completing

courses/workshops as outlined by the Eligibility Chart. These will be in addition to a degree/diploma that a candidate is already completing.

- Will be required to submit documentation of employment at the time the experience requirement is met.
- Will be required to submit documentation of completed courses/workshops at the time the experience requirement is met.

*A corporate executive is defined as an individual, employed by a firm responsible for the operation of three or more properties, who serves as a regional or corporate director of operations, or has ultimate corporate responsibility for rooms, marketing, accounting and finance, food and beverage, human resources, or engineering.

# 보고서(REPORT)

㈜강원랜드 메인카지노 기획팀장이었던 정유석씨가 ㈜웰드건설 부사장으로 고용되어 사이판 월드 리조트에서 3년 계약기간 임에도 불구하고 5개월 근무 후 퇴직하게 된 사건에 대해 본인은 한국호텔업계의 전문가로서 다음과 같은 결론을 내릴 수 있다고 본다.

I. ㈜강원랜드 퇴사에 따른 불이익(기회비용)

   a. 정년보장 : 강원랜드는 한국정부가 최대 주주인 회사이고 정년퇴직 나이가 만 58세로 한국 내 타 호텔의 정년보다 3년이 길며 정부소유 회사인 관계로 평생고용이 보장되는 고용제도를 시행하고 있는 국내 유일의 호텔이라고 볼 수 있다. 종업원이 사규에 의한 면직행위를 하지 않는 한 58세까지 고용을 보장하는 측면에서 한국 호텔산업계에서 job security가 가장 높은 회사이다.

   b. 급여와 복리후생: 강원랜드의 급여 수준은 한국 호텔업계 평균 급여의 2배 정도의 높은 급여 수준이고 급여 측면에서 보면, 한국 호텔리어들이 가장 일하고 싶어하는 회사이다. 또한 강원랜드는 퇴직금(retirement package)제도를 시행하고 있는 몇 안 되는 호텔로서 직원들에게 주어지는 금전적인 보상은 연봉제를 채택하는 타 호텔에 비해 높다고 할 수 있다.(필요시 세부자료 추후 제출 가능)

   c. 성장 가능성 : 강원랜드는 한국인이 출입할 수 있는 유일한 카지노 리조트로 내국인 카지노 사업을 독점하고 있기 때문에 매년 안정된 많은 수익을 내고 있으며 현재 건설중인 골프장, 스키장 등이 완공되면 한국 최대의 리조트가 될 것이고 이에 따른 종업원들의 급여 및 복리후생 수준도 일반 호텔업계와 더 차이를 보이게 될 것이다. 강원랜드에서의 정유석씨의 직책인 메인카지노 기획팀장과 건설관리팀장은 직책 요구기준(job qualification) 및 직책 기술서(job specification) 측면에서 볼 때 한국 호텔업계의 최고 엘리트 인력만이 지원 및 업무 수행을 할 수 있는 직책으로 이러한 직책과 회사내 성장 가능성을 포기한 정유석씨의 기회 비용은 상당히 큰 금액으로 추정된다.(필요시 세부자료 추후 제출 가능)

000018

## II. 호텔취업 시장의 악화

a. 서울 특1급 호텔 경영 성과 분석

| 구 분 | 2001년 | 2002년 | 2003년 |
|---|---|---|---|
| Occupancy(%) | 74.2% | 73.2% | 64.1% |
| A.D.R.(원) | 195,868 | 206,912 | 182,891 |

b. 호텔 및 외식산업 경기 침체 : 2003년도 서울 특급호텔 경영 결과 2002년 대비 매출액 253,938백만원(9%) 감소, 영업이익 42%, 경상이익 12%, 당기순이익 73% 감소했고, 2003년 외식산업 경영 결과도 2002년 대비 경상이익 14%감소, 영업이익 23% 감소, 당기순이익 17% 감소한 것으로 나타났으며 한국 경제의 장기 불황 속에서 호텔 및 외식산업은 2004, 2005년에도 침체의 늪에서 빠져 나오기가 쉽지 않을 것으로 많은 전문가들이 예상하고 있다.

c. 2003,2004년 마이너스 성장으로 인해 호텔 및 외식업계에서는 인력 채용 규모를 현저히 줄이고 있고 그나마 entry level position 위주의 채용이 이루어 지고 있는 점을 감안 할 때 정유석씨의 경우 2003년 이후부터 현시점까지 임원이나 간부급의 호텔 재취업의 기회는 상당히 낮다고 할 수 있다.

## III. 계약기간 중 조기 퇴사에 따른 불이익

a. 이직 : 한국 사회의 직장생활에 대한 기준이나 직원 채용 과정에서 잦은 이직은 지원자에게 불리하게 작용함은 틀림없다. 정유석씨처럼 어떤 직장에서 고용계약기간을 채우지 못하고 5개월이라는 짧은 기간에 직장을 옮긴 경우 고용주는 지원자의 자질을 의심할 확률이 높고, 특히 임원이나 간부직일 경우 더 불리하게 작용된다고 할 수 있다.

b. 수동적인 소송 진행 : 한국 직장인의 경우 법적 소송을 진행할 때 필요한 시간을 만들기가 쉽지 않은 관계로 직장인이 법적 소송을 적극적으로 진행하기가 현실적으로 힘든 점을 감안 할 때, 정유석씨의 한국호텔 재취업은 현실적으로 쉽지 않은 상태라고 할 수 있다.

IV. 임원 계약

    a. 근로계약서 : 한국 일반 종업원의 경우 근로계약서를 작성하지만, 임원일 경우 한국 근로기준법상의 근로계약서를 작성하지 않는 것이 호텔업계의 관례이다.

    b. 회사 내부 발령 품의서 : 임원의 경우 근로 계약서를 작성하지 않고 회사 내부 발령 품의서상의 연봉, 복리후생, 기타 근무조건 등을 회사와 임원의 고용 조건으로 쌍방이 인정함이 호텔업계 관례이다. 또한 정유석씨의 경우도 연봉 및 근무조건이 합의되고, 발령 품의를 득하였으며 급여가 지급되고 실제 근무를 하였기 때문에 회사와 고용관계에 있었던 상태라고 할 수 있다.(서울 특급호텔 인사부장 2명 참고)

2004년 07월 13일

_Joon Park_ (서명)

박 준 환 ( JOON HWAN PARK )

000019